UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

BEIJING DADDY'S CHOICE SCIENCE AND
TECHNOLOGY CO., LTD.

                        Plaintiff,

      v.

PINDUODUO INC., HONGKONG WALNUT
STREET LIMITED, HANGZHOU WEIMI
NETWORK TECHNOLOGY CO., LTD.,
SHANGHAI PINDUODUO NETWORK
TECHNOLOGY CO., LTD., SHENZHEN
QIANHAI XINZHIJIANG INFORMATION
TECHNOLOGY CO., LTD., HANGZHOU AIMI
NETWORK TECHNOLOGY CO., LTD.,
SHANGHAI XUNMENG INFORMATION
TECHNOLOGY CO., LTD., and JOHN DOE
SELLERS 1-3.

                     Defendants.

------------------------------------------------------------- X

Civil Action No. 18 Civ. 6504

## COMPLAINT

Plaintiff, Beijing Daddy's Choice Science and Technology Co., Ltd. ("Daddy's Choice" or "Plaintiff"), by its undersigned attorneys, as and for its Complaint against Pinduoduo Inc. ("Pin Inc."), HongKong Walnut Street Limited ("Walnut Street"), Shenzen Qianhai Xinzhijian Information Technology Co., Ltd. ("Shenzen"), Shanghai Pinduoduo Network Technology Co., Ltd. ("Shanghai Pinduoduo"), Hangzhou Weimi Network Technology Co., Ltd. ("Hangzhou Weimi"), Hangzhou Aimi Network Technology Co., Ltd. ("Hangzhou Aimi"), Shanghai Xunmeng Information Technology Co., Ltd. ("Shanghai Xunmeng," collectively "Pinduoduo Defendants"), and John Doe Sellers 1-3 ("Defendant Sellers," collectively with the Pinduoduo Defendants, "Defendants") alleges:

## SUBSTANCE OF THE ACTION

1.      Pinduoduo Defendants operate a Chinese language e-commerce platform that is available at least in the People's Republic of China ("China") and the United States.  On information and belief, Pinduoduo Defendants' e-commerce platform allows users through a downloadable "app" and interactive website to purchase goods from sellers in China and other countries.

2.      Plaintiff owns U.S. Registration Nos. 5,238,282 and 5,463,121 for Daddy's Choice (the "DADDY'S CHOICE marks"), has used those marks and the Daddy's Choice name in the United States as its brand identification on a range of goods including infant and baby diapers, and has established a reputation for excellence in that field.

3.      On information and belief, Pinduoduo Defendants have knowingly enabled sellers using its e-commerce platform which is available through the website www.pinduoduo.com and mobile app Pinduoduo (in English) or 拼多多 (in Chinese) (collectively "Pinduoduo") to sell goods which, without authorization or license from Plaintiff, willfully and intentionally use Plaintiff's DADDY'S CHOICE marks.  Although the goods are ostensibly advertised for sale in China, on information and belief, with the knowledge and consent of Defendants, individual sellers are willing to and do ship these infringing goods to purchasers in the United States.

4.      On information and belief, Pinduoduo Defendants have knowingly enabled sellers using its e-commerce platform to falsely imply that they are affiliated with or authorized by Plaintiff to sell goods bearing Plaintiff's DADDY'S CHOICE marks.

5.      On information and belief, Pinduoduo Defendants facilitate sales of counterfeit and unauthorized goods through their e-commerce platform which is promoted as a low-cost source of goods.  As described by Pin Inc. in its SEC Form F-1/A Statement, Defendants'

8308395.5

platform "provides buyers with value-for-money merchandise and fun and interactive shopping experiences."

6.      Defendant Sellers use the Pinduoduo e-commerce platform to sell unauthorized goods bearing the DADDY'S CHOICE marks and name.  On information and belief, Defendant Sellers are willing to and have sold these unauthorized goods bearing the DADDY'S CHOICE marks and name to consumers directly in the United States, even though the unauthorized goods were intended for sale in China.

7.      Defendant Sellers use the Pinduoduo e-commerce platform to sell goods in packaging substantially similar to that used by Plaintiff for its DADDY'S CHOICE diapers while claiming that these other diapers are made in the "same factory" as DADDY'S CHOICE diapers.

8.      Plaintiff has filed this action to enjoin Defendants from offering for sale in the United States unauthorized goods using the DADDY'S CHOICE marks and name or goods which Defendants are misleading consumers into believing are those of Plaintiff.  Plaintiff asserts claims for trademark infringement, unfair competition, and false designation of origin pursuant to Sections 32 and 43(a), (d) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and New York State common law.  Plaintiff also seeks an accounting, profits, and damages.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) and (b).   This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) and the principles of pendent jurisdiction.

10.     Personal jurisdiction is proper over Defendants pursuant to N.Y. CPLR §
302(a)(1) and § 302(a)(3), or, in the alternative, Rule 4(k) of the Federal Rules of Civil
Procedure, for at least the following reasons:

a.  Pinduoduo Defendants operate an interactive website and mobile app, Pinduoduo,
    which, although presented in the Chinese language, is available in the United
    States through the Apple App store and on the internet.

b.  On information and belief, consumers in the United States and New York,
    specifically Chinese-reading consumers, can use Pinduoduo Defendants' e-
    commerce platform to purchase goods, including unauthorized goods bearing
    DADDY'S CHOICE marks for delivery to the United States, with the knowledge
    and assistance of Pinduoduo Defendants.  Pinduoduo Defendants are therefore
    purposefully interacting with New York consumers;

c.  Defendant Sellers offer goods for sale on Pinduoduo and, on information and
    belief, are willing to and have shipped goods to the United States, including New
    York.  Defendant Sellers are therefore purposefully interacting with New York
    consumers;

d.  There are approximately 2.9 million Chinese speakers in the United States,
    including more than 500,000 Chinese speakers in New York, most of whom, on
    information and belief, follow events and commercial developments in China and
    are aware of popular e-commerce platforms including Pinduoduo;

e.  Plaintiff has developed valuable trademark rights in the United States and New
    York in its DADDY'S CHOICE marks which will be irreparably harmed by the
    availability and sale of unauthorized DADDY'S CHOICE branded goods in

4

China, the United States and New York, which constitutes tortious conduct on the part of Defendants;

f.  Plaintiff's registered trademarks are being infringed by Defendants' actions;

g.  Pinduoduo Defendants are knowingly allowing and aiding others to engage in unfair competition in the United States, including New York;

h.  Seller Defendants are engaging in unfair competition and trademark infringement in the United States, including New York;

i.  On July 16, 2018, Pin Inc. filed its Amendment No. 1 to Form F-1 ("Form F-1/A") with the U.S. Securities and Exchange Commission for an Initial Public Offering ("IPO") of its shares in the United States to be listed on the New York Stock Exchange, thereby taking advantage of United States and New York laws and financial markets, and stating its intent in the near future to sell stock in the United States for the purpose of expanding the reach and volume of sales on its e-commerce platform;

j.  Shanghai Xunmeng owns U.S. Registration Nos. 5,313,364 and 5,313,365 for the mark PINSHARE, showing an intent to further expand its reach in the United States market;

k.  Shanghai Xunmeng maintains an English language website, www.pin-share.com, which markets its e-commerce platform to other corporations.  The website lists some of Shanghai Xunmeng's "partners and users," including multiple American companies.

11.     Venue is proper in this district under 28 U.S.C. § 1391 (c)(3).

THE PARTIES

12.     Beijing Daddy's Choice Science and Technology Co., Ltd. is a corporation incorporated under the laws of the People's Republic of China with its principal place of business at No. 2 Ding Fu Zhuang Xi Li, Floor 3, Suite 318, Chaoyang District, Beijing, China.

13.     Defendant Pin Inc. is a holding company incorporated under the laws of the Cayman Islands with its principal offices at 28/F, No. 533 Loushanguan Road, Changning District, Shanghai, People's Republic of China.

14.     Defendant Walnut Street is a wholly-owned subsidiary of Pin Inc. incorporated under the laws of the Hong Kong Special Administrative Region of the People's Republic of China.

15.     Defendants Hangzhou Weimi, Shanghai Pinduoduo, and Shenzen are wholly owned subsidiaries of Walnut Street incorporated under the laws of the People's Republic of China.

16.     Defendant Hangzhou Aimi is incorporated under the laws of the People's Republic of China.  Due to Chinese legal restrictions regarding foreign ownership of companies, Hangzhou Aimi has entered into a series of contractual agreements with Hangzhou Weimi. On information and belief, these contractual agreements allow Pinduoduo to be operated and nominally controlled by Chinese companies while foreign registered entities, such as Pin Inc., are able to (i) exercise effective control over Pinduoduo; (ii) receive substantially all of the economic benefits of Pinduoduo; and (iii) have an exclusive option to purchase the equity interests of the Chinese subsidiaries if permitted by Chinese law.

17.     Defendant Shanghai Xunmeng is a wholly owned subsidiary of Hangzhou Aimi incorporated under the laws of the People's Republic of China.

6

18.     On information and belief, the Pinduoduo Defendants are mere alter egos of one another.

19.     Pinduoduo Defendants operate Pinduoduo, a Chinese e-commerce platform that offers a broad range of merchandise.

20.     Defendant John Doe Seller 1 is a third-party seller which uses the Pinduoduo e-commerce platform to falsely claim to be authorized by Plaintiff while selling Daddy's Choice goods.

21.     Defendant John Doe Seller 2 is a third-party seller which uses the Pinduoduo e-commerce platform to falsely claim to be Plaintiff or affiliated with Plaintiff while selling Daddy's Choice goods.

22.     Defendant John Doe Seller 3 is a third-party seller which uses the Pinduoduo e-commerce platform to sell goods in packaging confusingly similar to that of Plaintiff while advertising that its goods are made in the "same factory" as Daddy's Choice diapers.

23.     Pinduoduo provides manufacturers, sellers, and buyers of unauthorized goods a marketplace for such goods, and, upon information and belief, provides online marketing, credit card processing, financing, and customer service that effectuate the sale of infringing or unauthorized products.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

24.     Daddy's Choice is a leading Chinese baby care brand that was founded in 2015.

25.     Daddy's Choice began sales in 2016.  In 2017, its sales were more than RMB 300 million (approximately $44.78 million).

26.     Daddy's Choice diapers are now offered for sale in more than 12,000 stores in more than 200 cities in China.

7

8308395.5

27.     Daddy's Choice diapers have won many awards, such as 2017 Chinese Mommy and Babies Favored Brand, 2017 Chinese Diapers with Influential Impact, and 2017 Innovative Baby Products Award.  Additionally, Daddy's Choice diapers have been ranked No. 1 on the list of "Chinese Domestic Diaper Brand."

28.     Daddy's Choice markets itself as a premium diaper brand and maintains strict quality control standards for its diapers.  On information and belief, many consumers purchase Plaintiff's diapers because of Plaintiff's reputation for quality.

29.     On July 4, 2017, the United States Patent and Trademark Office issued U.S. Registration No. 5,238,282 for the DADDY'S CHOICE word logo, including words/letters/numbers and on May 8, 2018, the United States Patent and Trademark Office issued U.S. Registration No. 5,463,121 for the word mark DADDY'S CHOICE, both for "disposable baby diapers" and other goods, namely "non-medicated bar soap, shampoo; washing-up liquid; deodorants for personal use; deodorants for animals; baby deodorant in pill form" in International Class 3, and "air deodorant; deodorizers for household pet litter boxes; room deodorants" in International Class 5.  Copies of the Registration Certificates are attached as **Exhibit 1**.  These registrations are valid, subsisting, and in full force and effect.

30.     Daddy's Choice intends to continue to preserve and maintain its rights with respect to the DADDY'S CHOICE marks and to expand its business in the United States.

31.     Daddy's Choice has invested considerable sums of money in developing and growing its brand name in the United States.  It has done this through engaging in marketing campaigns, issuing press releases, and purchasing advertisements.

8

32.     As part of Daddy's Choice's efforts to develop its brand and increase its presence in the United States, it purchased an advertisement on a billboard in Times Square, New York, NY.

33.     Daddy's Choice has engaged in a product sample tryout in 2017 with American consumers.

34.     As part of its marketing efforts, Plaintiff also made a donation to Peking University North America Alumni Association.

35.     Daddy's Choice has also had consumers in the United States review its goods on the YouTube website: https://www.youtube.com/watch?v=CjbIE7_496o; https://www.youtube.com/watch?v=tTvToAdG5Q4.

36.     To date, Daddy's Choice has invested more than $200,000 in its sales and marketing campaign in the United States.

37.     Daddy's Choice diapers are offered for sale in the United States and New York through authorized online retailers.  Specifically, Daddy's Choice diapers are available for purchase on the Yamibuy website.

38.     Under United States law, all children's products sold in the United States must be tested and certified by a third party laboratory to ensure that they meet safety requirements.

39.     Plaintiff had its diapers tested by the Deesev Testing International Corporation ("DTI") and on August 17, 2017, DTI issued a certificate confirming that Daddy's Choice diapers comply with the U.S. Consumer Product Safety Improvement Act of 2008.  A copy of the certificate is attached as **Exhibit 2.**

40.     The packaging for the diapers Plaintiff offers for sale in the United States is materially different than the packaging for the diapers Plaintiff offers for sale in China.  For

9

example, the packaging for goods sold in the United States contains English labels, whereas the labels for the goods sold in China are in Chinese.

41.     Plaintiff offers a free return and replacement for diapers sold in China, while diapers sold in the United States are subject to the individual retailer's return policy.

42.     Since November 2017, Daddy's Choice has sold approximately $50,000 worth of goods in the United States.

43.     Given Plaintiff's use of the DADDY'S CHOICE mark and name, individuals throughout the United States and New York have come to associate DADDY'S CHOICE as identifying Plaintiff and its product.  Through Plaintiff's untarnished reputation, years of effort, and investments of time, money and creativity, its DADDY'S CHOICE mark has acquired highly valuable goodwill in the U.S. and abroad.

<u>Defendants' Unlawful Activities</u>

44.     Pinduoduo is an e-commerce platform which, according to Pin Inc.'s Form F-1/A "pioneered an innovative 'team purchase' model."  Pinduoduo allows consumers to interact with its platform "directly or through popular social networks, such as Weixin and QQ."

45.     On information and belief, Pinduoduo has developed a reputation as a discount e-commerce platform offering cheap products, including unauthorized and counterfeit goods.

46.     As stated in Pin Inc.'s Form F-1/A, Pinduoduo has over 300 million active buyers and over 1 million merchants.

47.     The Pinduoduo website and mobile app are available to consumers in the United States, including New York.

48.     On information and belief, the Chinese-American population in New York City numbers over 500,000.

8308395.5

49.     Weixin is the Chinese version of the popular social networking platform Wechat. On information and belief, as of March 2018, Wechat had approximately 1 billion monthly active users, and roughly 83% of all smartphone users in China use Wechat.

50.     Defendant Sellers use the Pinduoduo e-commerce website to:

        a.      Sell unauthorized and/or counterfeit DADDY'S CHOICE diapers while falsely claiming to be authorized;

        b.      Use forged "Certificates of Authorization" containing Plaintiff's name and the DADDY'S CHOICE marks to sell unauthorized and/or counterfeit goods;

        c.      Sell unauthorized and/or counterfeit DADDY'S CHOICE diapers while falsely claiming to be a "flagship store;" or

        d.      Sell unbranded diapers in packaging almost identical to that used by Plaintiff for its DADDY'S CHOICE diapers while claiming that the unbranded diapers are manufactured in the "same factory" as DADDY'S CHOICE diapers.

51.     Pinduoduo Defendants know that Pindoudou has made it possible for third-party sellers to represent themselves falsely as "authorized" retailers of Plaintiff's products, including by posting forged "Certificates of Authorization" containing Plaintiff's name and the DADDY'S CHOICE marks, and also to implicitly claim affiliation with Plaintiff by calling themselves a "flagship store."  Screen shots showing unauthorized or counterfeit DADDY'S CHOICE products available for sale on Pinduoduo are attached as **Exhibit 3**.

52.     Pinduoduo Defendants also allow third-party sellers to list diapers for sale in packaging that is almost identical to that used by Plaintiff for its diapers while claiming that the diapers are made in the "same factory" as Daddy's Choice diapers.  A screen shot showing goods

11

offered for sale on Pinduoduo in substantially similar packaging and falsely touted as being made in the "same factory" is attached as **Exhibit 4.**

53.     On information and belief, Pinduoduo facilitates the sale of unauthorized or counterfeit goods by making it easy for one seller to copy another seller's webpage contents through a feature called the "Pinduoduo loading assistant."

54.     On information and belief, the Pinduoduo loading assistant allows a seller to do a key word search for other sellers with similar items and then simply copy the first seller's webpage content, including pictures with trademarks.

55.     On or about July 17, 2018, a keyword search on the Pinduoduo e-commerce platform for the terms "Daddy Choice Diapers" returns 31 merchants/stores selling "Daddy's Choice Diapers."

56.     On information and belief, keyword searches on Pinduoduo do not return all sellers selling a particular product.  Instead of using keyword searches, some sellers have a unique barcode which they share with their "friends" on the Wechat social network.

57.     On information and belief, Pindoudou has also knowingly made it possible for third-party sellers to resell goods containing the DADDY'S CHOICE mark which were intended for sale in China to other countries, including the United States and New York, with knowledge that goods, including DADDY'S CHOICE branded goods.  Defendants are compensated for enabling the sale of these infringing and unauthorized goods.

58.     On information and belief, Pinduoduo has also knowingly make it possible and facilitated third-parties to sell diapers which are confusingly similar to Plaintiff's diapers.

59.     Pinduoduo Defendants knowingly encourage, assist, and profit from the sale of counterfeit and unauthorized goods on their Pinduoduo e-commerce platform.  Pinduoduo is

12

8308395.5

well-known as a source of low-cost goods and encourages its users to form groups to buy larger volumes of goods at lower prices.

60.     Pinduoduo Defendants derive revenue primarily from online marketing services. Pin Inc. reported in its Form F-1 that revenue from online marketing services constituted 69.3% of its revenue in 2017, and 80.0% of its revenue for the first quarter of 2018.

61.     Pinduoduo is a relatively new e-commerce platform, but is experiencing significant growth.  According to Pin Inc.'s Form F-1/A, its revenue grew from RMB504.9 million in 2016 to RMB1,744.1 million in 2017, and from RMB37.0 for the first three months of 2017 to RMB1,384.6 million in the same period in 2018.

62.     Pin Inc. signaled its intent to complete an initial public offering ("IPO") in the United States by filing an Amendment No. 1 to Form F-1/A with the Securities and Exchange Commission on July 16, 2018.  Pin Inc. stated that it would use the proceeds from an IPO to, *inter alia*, expand its business operations.

63.     On information and belief, Pinduoduo Defendants were or should have been aware that third-party merchants using its e-commerce platform to sell goods bearing the DADDY'S CHOICE marks were not authorized to do so by Plaintiff and were not affiliated in anyway with Plaintiff.

64.     On information and belief, Pinduduo Defendants were or should have been aware that goods bearing the DADDY'S CHOICE marks listed for sale on its e-commerce platform were only intended for sale in China through its authorized sales channels, which do not include Pinduoduo.

65.     On information and belief, Pinduoduo Defendants were or should have been aware that some or all of the goods bearing the DADDY'S CHOICE marks listed for sale on its

8308395.5

e-commerce platform were likely counterfeit as Daddy's Choice has not authorized the sale of its goods on Pinduoduo and counterfeit goods are prevalent in China and on Pinduoduo.

66.     Pin Inc. included self-serving language in its Form F-1/A acknowledging that it is aware that sellers use its e-commerce platform to sell counterfeit and unauthorized goods, stating: "[w]e have been and may continue to be subject to allegations and lawsuits claiming that products listed or sold through our platform by third-party merchants are counterfeit, unauthorized, illegal or otherwise infringe third-party copyrights, trademarks and patents or other intellectual property rights, or that content posted on our user interface contains misleading information on description of products and comparable prices."

67.     On information and belief, Pinduoduo Defendants have been subject to criticism by consumers and the general public, including public demonstrations and protests, due to, *inter alia*, the presence of counterfeit and unauthorized goods on the Pinduoduo e-commerce platform.

68.     Additionally, although Pin Inc. claims to have adopted "strict measures" to prevent against the sale of counterfeit or unauthorized goods, it acknowledged that "in January 2018, we were required by the relevant government authorities to strengthen supervision on the qualifications of the distributors of publications on our platform and to respond effectively to claims of copyright infringement."

69.     On information and belief, Defendant Sellers are willing and have shipped counterfeit, unauthorized and/or infringing goods bearing the DADDY'S CHOICE marks or misleading packaging to consumers in the United States, including New York.

70.     Plaintiff has advised Pinduoduo Defendants that they are allowing sellers to sell products violating Plaintiff's prior established and exclusive rights in its name and registered mark and to falsely claim authorization from or affiliation with Plaintiff.

14

8308395.5

71.     In 2017, Plaintiff, through counsel, sent multiple official notice letters to Pinduoduo Defendants informing Pinduoduo Defendants that third-party sellers were selling counterfeit or unauthorized goods bearing the DADDY'S CHOICE marks on its e-commerce platform.

72.     Although Pinduoduo Defendants responded to these letters by initially removing some counterfeit or unauthorized goods from its e-commerce platform, unauthorized goods quickly re-appeared on Pinduoduo.

73.     On or about April 24, 2018, Plaintiff sent Pinduduo Defendants a letter informing them that counterfeit or unauthorized goods with the DADDY'S CHOICE marks were again being offered for sale on their e-commerce platform.  Pinduoduo Defendants did not respond to this letter.

74.     Despite being placed on notice of Plaintiff's prior rights, Pinduoduo Defendants have refused to curtail their unlawful activities.

75.     By allowing and facilitating third-party sellers to falsely claim to be part of, affiliated with or authorized by Plaintiff, and by allowing and facilitating third-party sellers to ship goods to the United States which were intended for sale in China, Pinduoduo Defendants are likely to confuse and deceive the trade and the public unless enjoined.

76.     By selling diapers while falsely claiming to be part of, affiliated with, or authorized by Plaintiff, and by shipping goods to the United States which were intended for sale in China, Seller Defendants are likely to confuse and deceive the trade and the public unless enjoined.

77.     On information and belief, Defendants' unlawful use of Plaintiff's DADDY'S CHOICE mark has extended to the United States and this district.

15

78.     On information and belief, when consumers contact Pinduoduo Defendants by phone and inform Pinduoduo Defendants that they wish to have goods shipped directly to New York, they are directed to deal directly with the third-party sellers on Pinduoduo Defendants' e-commerce platform to do so.

79.     On information and belief, consumers are able to directly input American addresses as the "ship to" address on the Pinduoduo e-commerce platform.

80.     On information and belief, Defendant Sellers are willing to and have shipped goods to consumers in the United States, including New York.

81.     On information and belief, Pinduoduo Defendants knowingly provided the use of their e-commerce platform to merchants offering goods bearing the DADDY'S CHOICE marks and intended for sale in China to consumers in the United States, and knowingly allowed sellers to falsely describe themselves as "authorized" or "flagship store," and have thereby participated in and/or facilitated third parties infringement of the DADDY'S CHOICE marks and unfair competition with Plaintiff.

FIRST CLAIM FOR RELIEF
TRADEMARK INFRINGEMENT
AGAINST SELLER DEFENDANTS
(15 U.S.C. § 1114)

82.     Plaintiff repeats and realleges every allegation set forth in paragraphs 1 through 81 above, and incorporates them herein by reference.

83.     Seller Defendants' use of the DADDY'S CHOICE mark in connection with the sale, offering for sale, distribution, promotion, and advertising of related products and services infringes Plaintiff's Registration Nos. 5,238,282 and 5,463,121 for DADDY'S CHOICE.  Such use is likely to cause confusion, to cause mistake, or to deceive, and constitutes federal trademark infringement.

16

84.     Plaintiff has not authorized the sale of its goods on Pinduoduo.

85.     On information and belief, some of the goods bearing the DADDY'S CHOICE marks offered for sale by Defendant Sellers on Pinduoduo are counterfeit.

86.     On information and belief, some of the goods bearing the DADDY'S CHOICE marks offered for sale by Defendant Sellers on Pinduoduo are unauthorized "gray goods" which were originally intended for sale in China.  There are material differences between such unauthorized goods sold by Defendant Sellers and the goods offered by Plaintiff in the United States, for example the unauthorized packaging has labels in Chinese, not English.

87.     Defendant Sellers' acts have a substantial effect on consumers in the United States.

88.     On information and belief, Plaintiff's reputation in New York is harmed when consumers in New York order goods from Defendant Sellers for delivery in New York and receive counterfeit goods or gray goods with Chinese labels.

89.     Consumers and the trade are likely to be confused, mistaken, or deceived, and to believe that the products offered for sale by Defendant Sellers on Pinduoduo are those of Plaintiff, or are sponsored, authorized, licensed by, or otherwise connected with Plaintiff.  By their acts, Defendant Sellers unjustly enrich themselves and damage Plaintiff.

90.     Defendant Sellers' acts are in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

91.     Defendant Sellers' acts are willful and deliberate.

92.     Defendant Sellers' conduct will cause irreparable injury to Plaintiff unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

8308395.5

SECOND CLAIM FOR RELIEF
CONTRIBUTORY TRADEMARK INFRINGEMENT
AGAINST PINDUODUO DEFENDANTS
(15 U.S.C. § 1114)

93.     Plaintiff repeats and realleges every allegation set forth in paragraphs 1 through 92 above, and incorporates them herein by reference.

94.     Pinduoduo Defendants' operation of Pinduduo and its active facilitation of sellers' and Defendant Sellers' use of the DADDY'S CHOICE mark in connection with the sale, offering for sale, distribution, promotion, and advertising of related products and services contributes to infringement of Plaintiff's Registration Nos. 5,238,282 and 5,463,121 for DADDY'S CHOICE.  Such use is likely to cause confusion, to cause mistake, or to deceive, and constitutes federal trademark infringement.

95.     Plaintiff has not authorized the sale of its goods on Pinduoduo.

96.     On information and belief, some of the goods bearing the DADDY'S CHOICE marks offered for sale by Defendant Sellers on the Pinduoduo Defendants' e-commerce platform are counterfeit.

97.     On information and belief, some of the goods bearing the DADDY'S CHOICE marks offered by Defendant Sellers on the Pinduoduo Defendants' e-commerce platform are unauthorized "gray goods" which were originally intended for sale in China.  There are material differences between the unauthorized goods sold on Pinduoduo and the goods offered by Plaintiff in the United States, for example the unauthorized packaging has labels in Chinese, not English.

98.     Pinduoduo Defendants' acts have a substantial effect on consumers in the United States.

99.     On information and belief, Plaintiff's reputation in New York is harmed when consumers in New York order goods through Pinduoduo and receive counterfeit goods or gray goods with Chinese labels.

100.     Consumers and the trade are likely to be confused, mistaken, or deceived, and to believe that the products offered for sale on Pinduoduo Defendants' e-commerce site are those of Plaintiff, or are sponsored, authorized, licensed by, or otherwise connected with Plaintiff.  By their acts, Pinduoduo Defendants unjustly enrich themselves and damage Plaintiff.

101.     Pinduoduo Defendants' acts are in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

102.     Pinduoduo Defendants' acts are willful and deliberate.

103.     Pinduoduo Defendants' conduct will cause irreparable injury to Plaintiff unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

THIRD CLAIM FOR RELIEF
UNFAIR COMPETITION
AGAINST SELLER DEFENDANTS
(15 U.S.C. § 1125(a))

104.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 103 above, and incorporates them herein by reference.

105.     Defendant Sellers' use of the DADDY'S CHOICE mark in connection with the advertising, promotion, and sale of goods that are similar to, related to, or competitive with those offered by Plaintiff, but that are not under Plaintiff's control or management constitutes unfair competition.  Defendant Sellers' acts constitute the use of a false designation of origin and a false representation that goods offered for sale on the Pinduoduo e-commerce platform are Plaintiff are sponsored, authorized, licensed by or otherwise connected with Plaintiff and their quality assured thereby.

19

106.    On information and belief, Defendant Sellers have knowingly labeled themselves as "authorized" or "flagship store" in connection with the sale of goods bearing the DADDY'S CHOICE marks although they are not authorized by or affiliated with Plaintiff.

107.    By falsely describing themselves as "authorized" or "flagship store," these unauthorized sellers create the false impression that they are, or are affiliated with, Plaintiff and are receiving their goods directly from Plaintiff.

108.    On information and belief, Defendant Sellers have offered for sale diapers in packaging almost identical to that used by Plaintiff's for its DADDY'S CHOICE diapers while claiming that the infringing diapers are manufactured in the "same factory."

109.    By falsely claiming that the diapers are manufactured in the "same factory" and using substantially identical packaging, these unauthorized sellers create the false impression that they are affiliated with Plaintiff, are receiving their goods directly from Plaintiff, and/or are selling the same goods as Plaintiff.

110.    Defendant Sellers' actions have a substantial effect on U.S. consumers.

111.    On information and belief, unauthorized sales of Plaintiff's goods in the United States depress the number of authorized sales of Plaintiff's goods.

112.    Plaintiff has invested considerable time, effort, and money into establishing itself as a premium baby-care brand.

113.    On information and belief, by falsely claiming that goods offered for sale on the Pinduoduo e-commerce platform, a discount e-commerce platform, are sponsored, authorized, licensed by or otherwise connected with Plaintiff, Defendant Sellers are harming Plaintiff's reputation, including among consumers located in the United States and New York.

8308395.5

114.    Defendant Sellers' acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

115.    Defendant Sellers' conduct will cause irreparable injury to Plaintiff unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

FOURTH CLAIM FOR RELIEF
CONTRIBUTORY UNFAIR COMPETITION
AGAINST PINDUODUO DEFENDANTS
(15 U.S.C. § 1125(a))

116.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 115 above, and incorporates them herein by reference.

117.    Pinduoduo Defendants' operation of Pinduoduo and its active facilitation of sellers' and Defendant Sellers' use of the DADDY'S CHOICE mark in connection with the advertising, promotion, and sale of goods that are similar to, related to, or competitive with those offered by Plaintiff, but that are not under Plaintiff's control or management constitutes contributory unfair competition.  Pinduoduo Defendants' acts contribute to the use of a false designation of origin and a false representation that goods offered for sale on the Pinduoduo e-commerce platform are Plaintiff are sponsored, authorized, licensed by or otherwise connected with Plaintiff and their quality assured thereby.

118.    On information and belief, Pinduoduo Defendants have knowingly allowed sellers who are not authorized by or affiliated with Plaintiff to describe themselves as "authorized" or "flagship store" on its Pinduoduo e-commerce platform.

119.    By falsely describing themselves as "authorized" or "flagship store," these unauthorized sellers create the false impression that they are, or are affiliated with, Plaintiff and are receiving their goods directly from Plaintiff.

21

120.    On information and belief, Pinduoduo Defendants allow and encourage sellers including the Defendant Sellers, to offer for sale diapers in packaging almost identical to that used by Plaintiff's for its DADDY'S CHOICE diapers while claiming that the infringing diapers are manufactured in the "same factory."

121.    By falsely claiming that the diapers are manufactured in the "same factory" and using substantially identical packaging, these unauthorized sellers create the false impression that they are affiliated with Plaintiff, are receiving their goods directly from Plaintiff, and/or are selling the same goods as Plaintiff.

122.    Pinduoduo Defendants' and Defendant Sellers' actions have a substantial effect on U.S. consumers.

123.    On information and belief, unauthorized sales of Plaintiff's goods in the United States through Pinduoduo depress the number of authorized sales of Plaintiff's goods.

124.    Plaintiff has invested considerable time, effort, and money into establishing itself as a premium baby-care brand.

125.    On information and belief, by allowing Defendant Sellers to falsely claim that goods offered for sale on the Pinduoduo e-commerce platform, a discount e-commerce platform, are sponsored, authorized, licensed by or otherwise connected with Plaintiff, Pinduoduo Defendants are harming Plaintiff's reputation, including among consumers located in the United States and New York.

126.    Pinduoduo Defendants' acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

127.    Pinduoduo Defendants' conduct will cause irreparable injury to Plaintiff unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

8308395.5

FIFTH CLAIM FOR RELIEF
COMMON LAW UNFAIR COMPETITION

128.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 127 above, and incorporates them herein by reference.

129.    Defendants have prominently used DADDY'S CHOICE marks in connection with its business and the advertising, promotion, and sale of goods on their e-commerce platform.  Defendants' use of DADDY'S CHOICE marks for its own, related goods is likely to confuse the public as to the origin, source, sponsorship, or quality of Defendant's business and goods and is likely to mislead persons to believe that Defendant's business and goods are authorized by or affiliated with Plaintiff.

130.    Defendants' use of the DADDY'S CHOICE marks is with knowledge of Plaintiff's prior rights in the DADDY'S CHOICE name and marks.  By appropriating the goodwill of Plaintiff's name and marks, Defendants unjustly enriches themselves and damage Plaintiff.

131.    Defendants' conduct constitutes New York common law unfair competition with Plaintiff, which will cause irreparable injury to Plaintiff's good will and reputation unless enjoined by this Court.

WHEREFORE, Plaintiff demands judgment as follows:

1.    Permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendants from:

a.    Using the DADDY'S CHOICE marks, or any confusingly similar mark, corporate name, domain name, social media name, or other designation;

23

b.      Imitating, copying, using, reproducing, displaying, or authorizing any third party to imitate, copy, use, reproduce, or display Plaintiff's DADDY'S CHOICE marks, or any confusingly similar name or mark, in any manner or form or using any variation, reproduction, counterfeit, copy, colorable imitation, or simulation thereof on or in connection with any business or service or the advertisement or promotion thereof;

c.      Using, authorizing, or aiding in any way any third party to use any false designation of origin or false description, or performing any act that can, or is likely to, mislead members of the trade or public to believe that any good offered by or through Defendants is in any manner associated or connected with Plaintiff, or sponsored, approved, or authorized by Plaintiff;

d.      Using, authorizing, or aiding in any way any third party to describe itself (expressly or implicitly) as "authorized" by Plaintiff, or as a "flagship store" affiliated with Plaintiff;

e.      Authorizing, or aiding in any way any third party to resell goods bearing the DADDY'S CHOICE marks which were intended for consumers in China to consumers located in any other country;

f.      Engaging in any other activity constituting unfair competition with Plaintiff, or constituting an infringement of Plaintiff's DADDY'S CHOICE marks;

g.      Engaging in any of the acts complained of in this Complaint; and

h.      Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (e) above.

24

2.      Directing that Defendants, within five (5) days after entry of judgment, make all books and records and other documents concerning all transactions relating to DADDY'S CHOICE marks concerning any services or products connected therewith, or featuring such name or marks available to Plaintiff for review and inspection.

3.      Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any services or goods offered on the Defendants' e-commerce platform bearing the DADDY'S CHOICE marks or any confusingly similar mark or name, is authorized by Plaintiff or related in any way to Plaintiff.

4.      Directing that Defendants file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the above.

5.      Awarding Plaintiff such damages as it has sustained or will sustain by reason of Defendants' acts of unfair competition; all gains, profits, and advantages derived by Defendants from such conduct; and, pursuant to 15 U.S.C. § 1107, an amount up to three times the amount of such actual damages sustained as a result of Defendants' violation of the Lanham Act.

6.      Awarding Plaintiff exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate.

7.      Awarding Plaintiff its costs and disbursements incurred in this action, including its reasonable attorneys' fees.

8.      Awarding Plaintiff interest, including prejudgment interest, on the foregoing sums.

9.      Awarding Plaintiff such other and further relief as the Court may deem just and proper.

Dated: July 19, 2018

CARTER LEDYARD & MILBURN, LLP

By: _____
     John M. Griem, Jr.
     Jeffrey S. Boxer
     Madelyn K. White
2 Wall Street
New York, NY 10005
(212) 732-3200
griem@clm.com
boxer@clm.com
white@clm.com

8308395.5