**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- X

BEIJING DADDY'S CHOICE SCIENCE AND
TECHNOLOGY CO., LTD.

              Plaintiff,

      v.

PINDUODUO INC., HONGKONG WALNUT
STREET LIMITED, HANGZHOU WEIMI
NETWORK TECHNOLOGY CO., LTD.,
SHANGHAI PINDUODUO NETWORK
TECHNOLOGY CO., LTD. (n/k/a WALNUT
STREET (SHANGHAI) INFORMATION
TECHNOLOGY CO., LTD.), SHENZHEN
QIANHAI XINZHIJIANG INFORMATION
TECHNOLOGY CO., LTD., HANGZHOU AIMI
NETWORK TECHNOLOGY CO., LTD.,
SHANGHAI XUNMENG INFORMATION
TECHNOLOGY CO., LTD., THE ROYAL
FAVORITE MATERNITY AND BABY
PRODUCTS LIFESTYLE STORE, and JOHN
DOE SELLERS 1-3.

              Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

No.: 18-cv-06504 (NRB)

---------------------------------------------------------- X

## AMENDED COMPLAINT

      Plaintiff, Beijing Daddy's Choice Science and Technology Co., Ltd. ("Daddy's Choice"

or "Plaintiff"), by its undersigned attorneys, as and for its Complaint against Pinduoduo Inc.

("Pin Inc."), HongKong Walnut Street Limited ("Walnut Street"), Shenzen Qianhai Xinzhijian

Information Technology Co., Ltd. ("Shenzen"), Shanghai Pinduoduo Network Technology Co.,

Ltd. (n/k/a Walnut Street (Shanghai) Information Technology Co., Ltd.) ("Shanghai

Pinduoduo"), Hangzhou Weimi Network Technology Co., Ltd. ("Hangzhou Weimi"), Hangzhou

Aimi Network Technology Co., Ltd. ("Hangzhou Aimi"), Shanghai Xunmeng Information

Technology Co., Ltd. ("Shanghai Xunmeng," collectively "Pinduoduo Defendants"), The Royal Favorite Maternity and Baby Products Lifestyle Store ("Royal"), and John Doe Sellers 1-3 (collectively with Royal, "Defendant Sellers," collectively with the Pinduoduo Defendants, "Defendants") alleges:

<u>SUBSTANCE OF THE ACTION</u>

1.      Pinduoduo Defendants operate a Chinese language e-commerce platform that is available at least in the People's Republic of China ("China") and the United States.  On information and belief, Pinduoduo Defendants' e-commerce platform allows users to purchase goods from sellers in China and other countries through a downloadable "app" and interactive website.

2.      Plaintiff owns U.S. Registration Nos. 5,238,282 and 5,463,121 for Daddy's Choice (the "DADDY'S CHOICE marks"), has used those marks and the Daddy's Choice name in the United States as its brand identification on a range of goods including infant and baby diapers, and has established a reputation for excellence in that field.

3.      On information and belief, Pinduoduo Defendants have knowingly enabled sellers using its e-commerce platform which is available through the website www.pinduoduo.com and mobile app Pinduoduo (in English) or 拼多多 (in Chinese) (collectively "Pinduoduo") to sell goods which, without authorization or license from Plaintiff, willfully and intentionally use Plaintiff's DADDY'S CHOICE marks.  Although the goods are ostensibly advertised for sale in China, with the knowledge and consent of Defendants, as well as Defendants' technical support and encouragement, on information and belief individual sellers are willing to and have shipped these infringing goods to purchasers in the United States.

2

4.     On information and belief, Pinduoduo Defendants have knowingly enabled sellers using its e-commerce platform to falsely imply that they are affiliated with or authorized by Plaintiff to sell goods bearing Plaintiff's DADDY'S CHOICE marks.

5.     On information and belief, Pinduoduo Defendants facilitate sales of counterfeit and unauthorized goods through their e-commerce platform which is promoted as a low-cost source of goods.  As described by Pin Inc. in its SEC Form F-1/A Statement filed July 24, 2018, Defendants' platform "provides buyers with value-for-money merchandise and fun and interactive shopping experiences."

6.     Defendant Sellers use the Pinduoduo e-commerce platform to sell counterfeit or unauthorized goods bearing the DADDY'S CHOICE marks and name.

7.     Royal is willing to and has sold counterfeit or unauthorized goods bearing the DADDY'S CHOICE marks to at least one consumer in the United States, even though the unauthorized goods were intended for sale in China.

8.     Royal uses the Pinduoduo e-commerce platform to offer counterfeit or unauthorized goods while stating that it provides an "authenticity guarantee" and displaying pictures showing the unique features of Plaintiff's goods which, upon information and belief, appear to have been copied from Plaintiff's website.

9.     Defendant Sellers use the Pinduoduo e-commerce platform to sell goods in packaging substantially similar to that used by Plaintiff for its DADDY'S CHOICE diapers while claiming that these other diapers are made in the "same factory" as DADDY'S CHOICE diapers.

10.     Plaintiff has filed this action to enjoin Defendants from offering for sale in the United States unauthorized goods using the DADDY'S CHOICE marks and name or goods

which Defendants are misleading consumers into believing are those of Plaintiff.  Plaintiff

asserts claims for trademark infringement, unfair competition, and false designation of origin

pursuant to Sections 32 and 43(a), (d) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and New

York State common law.  Plaintiff also seeks an accounting, profits, and damages.

<u>JURISDICTION AND VENUE</u>

11.     This Court has subject matter jurisdiction under 15 U.S.C. § 1121, 28 U.S.C.

§§ 1331, and 1338(a) and (b).   This Court has supplemental jurisdiction over the state law

claims under 28 U.S.C. § 1367(a) and the principles of pendent jurisdiction.

12.     Personal jurisdiction is proper over Defendants pursuant to N.Y. CPLR

§ 302(a)(1) and § 302(a)(3), or, in the alternative, Rule 4(k) of the Federal Rules of Civil

Procedure, for at least the following reasons:

a.  Pinduoduo Defendants operate an interactive website and mobile app, Pinduoduo,

which, although presented in the Chinese language, is intentionally made

available in the United States through the Apple App store and Google Play.

b.  Consumers in the United States and New York, specifically Chinese-reading

consumers, can use Pinduoduo Defendants' e-commerce platform to purchase

goods, including counterfeit or unauthorized goods bearing DADDY'S CHOICE

marks for delivery to the United States, with the knowledge and assistance of

Pinduoduo Defendants.  Pinduoduo Defendants are therefore purposefully

interacting with New York consumers;

c.  Defendant Royal has sold and shipped goods to a consumer in New York;

d.  Defendant Sellers offer goods for sale on Pinduoduo and, on information and

belief, are willing to and have shipped goods to the United States, including New

York.  Defendant Sellers are therefore purposefully interacting with New York consumers;

e.  There are approximately 2.9 million Chinese speakers in the United States, including more than 500,000 Chinese speakers in New York, most of whom, on information and belief, follow events and commercial developments in China and are aware of popular e-commerce platforms including Pinduoduo and Yamibuy;

f.  Plaintiff has developed valuable trademark rights in the United States and New York in its DADDY'S CHOICE marks which will be irreparably harmed by the availability and sale of unauthorized DADDY'S CHOICE branded goods in China, the United States and New York, which constitutes tortious conduct on the part of Defendants;

g.  Plaintiff's registered trademarks are being infringed by Defendants' actions;

h.  Pinduoduo Defendants are knowingly allowing and aiding others to engage in trademark infringement and unfair competition in the United States, including New York;

i.  Defendant Sellers are engaging in unfair competition and trademark infringement in the United States, including New York;

j.  On or about July 26, 2018, Pin Inc. completed an Initial Public Offering ("IPO") of its shares in the United States to be listed on the New York Stock Exchange, thereby taking advantage of United States and New York laws and financial markets, and sold stock in the United States for the purpose of expanding the reach and volume of sales on its e-commerce platform;

5

     k.     Shanghai Xunmeng owns U.S. Registration Nos. 5,313,364 and 5,313,365 for the mark PINSHARE, showing an intent to further expand its reach in the United States market;

     l.     At the time of the filing of the original complaint in this matter, Shanghai Xunmeng maintained an English language website, www.pin-share.com, which marketed its e-commerce platform to other corporations.  The website listed some of Shanghai Xunmeng's "partners and users," including multiple American companies.

13.     Venue is proper in this district under 28 U.S.C. § 1391(c)(3).

<u>THE PARTIES</u>

14.     Beijing Daddy's Choice Science and Technology Co., Ltd. is a corporation incorporated under the laws of the People's Republic of China with its principal place of business at No. 2 Ding Fu Zhuang Xi Li, Floor 3, Suite 318, Chaoyang District, Beijing, China.

15.     Defendant Pin Inc. is a holding company incorporated under the laws of the Cayman Islands with its principal offices at 28/F, No. 533 Loushanguan Road, Changning District, Shanghai, People's Republic of China.

16.     Defendant Walnut Street is a wholly-owned subsidiary of Pin Inc. incorporated under the laws of the Hong Kong Special Administrative Region of the People's Republic of China.

17.     Defendants Hangzhou Weimi, Shanghai Pinduoduo, and Shenzen are wholly owned subsidiaries of Walnut Street incorporated under the laws of the People's Republic of China.

8383236.3

18.     Defendant Hangzhou Aimi is incorporated under the laws of the People's Republic of China.  Due to Chinese legal restrictions regarding foreign ownership of companies, Hangzhou Aimi has entered into a series of contractual agreements with Hangzhou Weimi. On information and belief, these contractual agreements allow Pinduoduo to be operated and nominally controlled by Chinese companies while foreign registered entities, such as Pin Inc., are able to (i) exercise effective control over Pinduoduo; (ii) receive substantially all of the economic benefits of Pinduoduo; and (iii) have an exclusive option to purchase the equity interests of the Chinese subsidiaries if permitted by Chinese law.

19.     Defendant Shanghai Xunmeng is a wholly owned subsidiary of Hangzhou Aimi incorporated under the laws of the People's Republic of China.

20.     On information and belief, the Pinduoduo Defendants are mere alter egos of one another.

21.     Pinduoduo Defendants operate Pinduoduo, a Chinese e-commerce platform that offers a broad range of merchandise.

22.     Defendant Royal is a third-party seller which uses the Pinduoduo e-commerce platform to sell counterfeit or unauthorized goods bearing the DADDY'S CHOICE marks.

23.     Defendant John Doe Seller 1 is a third-party seller which uses the Pinduoduo e-commerce platform to falsely claim to be authorized by Plaintiff while selling Daddy's Choice goods.

24.     Defendant John Doe Seller 2 is a third-party seller which uses the Pinduoduo e-commerce platform to falsely claim to be Plaintiff or affiliated with Plaintiff while selling Daddy's Choice goods.

7

25.     Defendant John Doe Seller 3 is a third-party seller which uses the Pinduoduo e-commerce platform to sell goods in packaging confusingly similar to that of Plaintiff while advertising that its goods are made in the "same factory" as Daddy's Choice diapers.

26.     Pinduoduo provides manufacturers, sellers, and buyers of unauthorized goods a marketplace for such goods, and, upon information and belief, provides online marketing, credit card processing, financing, and customer service that effectuate the sale of infringing or unauthorized products.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

27.     Daddy's Choice is a leading Chinese baby care brand that was founded in 2015.

28.     Daddy's Choice began sales in 2016.  In 2017, its sales were more than RMB 300 million (approximately $44.78 million), and its projected sales for 2018 are approximately $150 million.

29.     Daddy's Choice diapers are now offered for sale in more than 12,000 stores in more than 200 cities in China.  Daddy's Choice has not authorized the sale of any of its goods on Pinduoduo.

30.     Daddy's Choice diapers have won many awards, such as 2017 Chinese Mommy and Babies Favored Brand, 2017 Chinese Diapers with Influential Impact, 2017 Innovative Baby Products Award, 2018 CBME (Children-Baby-Maternity-Expo) Serving the Society Award, and the National Quality and Integrity Benchmark and Exemplary Enterprise issued by the China Quality and Quarantine Association.  Additionally, Daddy's Choice diapers have been ranked No. 1 on the list of "Chinese Domestic Diaper Brand."

31.     Daddy's Choice markets itself as a premium diaper brand and maintains strict quality control standards for its diapers.  On information and belief, many consumers purchase Plaintiff's diapers because of Plaintiff's reputation for quality.

32.     Daddy's Choice diapers are tested to be free of formaldehyde, allergens, and are marketed with simple packaging, no scents, fluorescent agent, ink, or other unnecessary additives.

33.     Daddy's Choice diapers are designed to offer a thinner, lighter diaper, without compromising absorption capacity.

34.     In addition to having a reputation for overall quality, Plaintiff's diapers have a reputation for being lightweight and breathable, and being more suitable for use in warmer weather than other diaper brands.

35.     On July 4, 2017, the United States Patent and Trademark Office issued U.S. Registration No. 5,238,282 for the DADDY'S CHOICE word logo, including words/letters/numbers and on May 8, 2018, the United States Patent and Trademark Office issued U.S. Registration No. 5,463,121 for the word mark DADDY'S CHOICE, both for "disposable baby diapers" and other goods, namely "non-medicated bar soap, shampoo; washing-up liquid; deodorants for personal use; deodorants for animals; baby deodorant in pill form" in International Class 3, and "air deodorant; deodorizers for household pet litter boxes; room deodorants" in International Class 5.  Copies of the Registration Certificates are attached as **Exhibit 1**.  These registrations are valid, subsisting, and in full force and effect.

36.     Daddy's Choice intends to continue to preserve and maintain its rights with respect to the DADDY'S CHOICE marks and to expand its business in the United States.

9

37.    Daddy's Choice has invested considerable sums of money in developing and growing its brand name in the United States.  It has done this through engaging in marketing campaigns, issuing press releases, and purchasing advertisements.

38.    As part of Daddy's Choice's efforts to develop its brand and increase its presence in the United States, it purchased an advertisement on a billboard in Times Square, New York, NY.

39.    Daddy's Choice has engaged in a product sample tryout in 2017 with American consumers.

40.    In 2018, Daddy's Choice worked with Yamibuy, an online marketplace, to conduct a large-scale free sample distribution, and invited American families to participate by recording reviews of their experiences using the free samples.

41.    As part of its marketing efforts, Plaintiff also made a donation to Peking University North America Alumni Association.

42.    Daddy's Choice has also had consumers in the United States review its goods on the YouTube website: https://www.youtube.com/watch?v=CjbIE7_496o; https://www.youtube.com/watch?v=tTvToAdG5Q4.

43.    In October 2018, Daddy's Choice sponsored the eighth annual conference of Peking University North American Alumni.

44.    To date, Daddy's Choice has invested more than $300,000 in its sales and marketing campaign in the United States which is targeted at the Chinese-American community.

45.    Daddy's Choice diapers are offered for sale in the United States and New York through authorized online retailers.  Specifically, Daddy's Choice diapers are available for purchase on the Yamibuy website.

10

46.     Yamibuy is a specialty website "dedicated to providing Asian snacks & food, beauty & health products, home appliances and books to Asian Americans."  According to its website, it is "the most popular one-stop shopping destination among the Chinese community in North America."

47.     Under United States law, all children's products sold in the United States must be tested and certified by a third party laboratory to ensure that they meet safety requirements.

48.     Plaintiff had its diapers tested by the Deesev Testing International Corporation ("DTI") and on August 17, 2017, DTI issued a certificate confirming that Daddy's Choice diapers comply with the U.S. Consumer Product Safety Improvement Act of 2008.  A copy of the certificate is attached as **Exhibit 2.**

49.     The packaging for the diapers Plaintiff offers for sale in the United States is materially different than the packaging for the diapers Plaintiff offers for sale in China.  For example, the packaging for goods sold in the United States contains English labels, whereas the labels for the goods sold in China are in Chinese.

50.     Plaintiff offers a free return and replacement for diapers sold in China, while diapers sold in the United States are subject to the individual retailer's return policy.

51.     In 2017, Daddy's Choice sold approximately $50,000 worth of goods in the United States.  It projects that it will sell almost $120,000 worth of goods in the United States in 2018.

52.     Given Plaintiff's use of the DADDY'S CHOICE marks and name, individuals throughout the United States and New York have come to associate DADDY'S CHOICE as identifying Plaintiff and its product.  Through Plaintiff's untarnished reputation, years of effort,

and investments of time, money and creativity, its DADDY'S CHOICE marks have acquired highly valuable goodwill in the U.S. and abroad.

<u>Defendants' Unlawful Activities</u>

53.     Pinduoduo is an e-commerce platform which, according to Pin Inc.'s Form F-1/A "pioneered an innovative 'team purchase' model."  Pinduoduo allows consumers to interact with its platform "directly or through popular social networks, such as Weixin and QQ."

54.     On information and belief, Pinduoduo has developed a reputation as a discount e-commerce platform offering cheap products, including unauthorized and counterfeit goods.

55.     On information and belief, the majority of business on the Pinduoduo e-commerce platform is very cheap items sold between third parties – transactions which are particularly susceptible to unauthorized or counterfeit goods.

56.     According to Pin Inc.'s Form F-1/A, although it previously operated an online direct sales marketplace, it transitioned into its current marketplace model in the first quarter of 2017.

57.     Pinduoduo Defendants derive revenue primarily from online marketing services. Pin Inc. reported in its Form F-1 that revenue from online marketing services constituted 69.3% of its revenue in 2017, and 80.0% of its revenue for the first quarter of 2018.  Thus, on information and belief, the Pinduoduo Defendants receive revenue from every sale consummated through their e-commerce platform.

58.     The Pinduoduo e-commerce platform has a recommendation feature.  Thus, when a consumer is looking at a particular good, the e-commerce platform automatically suggests other similar goods the consumer might be interested in.

59.     As stated in Pin Inc.'s Form F-1/A, Pinduoduo has over 300 million active buyers

and over 1 million merchants.

60.     The Pinduoduo website and mobile app are available to consumers in the United States, including New York.

61.     The Pinduoduo mobile app is available to consumers in the United States, including New York, through the Apple App Store and through Google Play.  On information and belief, both the Apple App Store and Google Play are country specific, thus the Pinduoduo Defendants have chosen to make their app available to consumers in the United States, including New York, by making it available for download on the United States-specific Apple App Store and Google Play.

62.     On information and belief, the Chinese-American population in New York City numbers over 500,000.

63.     Weixin is the Chinese version of the popular social networking platform Wechat. On information and belief, as of March 2018, Wechat had approximately 1 billion monthly active users, and roughly 83% of all smartphone users in China use Wechat.

64.     On information and belief, many Chinese-speaking individuals in the United States, including New York, also use Wechat to remain in contact with friends and family in China.

65.     On information and belief, the Pinduoduo Defendants have integrated their e-commerce platform with Wechat to facilitate team purchases – group purchases of the same goods.

66.     A consumer located in the United States can open the Pinduoduo e-commerce platform on a mobile phone and use it to purchase goods.

67.     On information and belief, consumers in China and Chinese-language consumers

13

in the United States will typically contact a seller directly prior to purchasing goods online to ensure that the seller still has the goods available at the specified price and is willing to ship to the consumer.

68.     The Pinduoduo e-commerce platform allows consumers to communicate directly with sellers through the platform.

69.     When making a purchase on the e-commerce platform, Pinduoduo prompts a consumer to enter a shipping address.  Although the drop-down options list Chinese provinces and districts, consumers can enter an American address directly into the shipping address field on the Pinduoduo e-commerce platform.

70.     The Pinduoduo e-commerce platform accepts American addresses which are entered directly into the platform, so long as the consumer also selects an option from the drop-down menu.  Individual sellers are able to communicate directly with consumers through the Pinduoduo e-commerce platform to discuss logistics before processing the transaction.

71.     Royal is a seller offering counterfeit or unauthorized goods bearing the DADDY'S CHOICE marks who was contacted in the usual manner through the Pinduoduo e-commerce platform and shipped infringing goods to the United States.

72.     Although shipping costs can be high to send goods purchased through the Pinduoduo e-commerce platform from China to the United States, on information and belief, these costs can be mitigated by purchasing items in bulk.

73.     The Pinduoduo e-commerce platform encourages consumers to buy goods in bulk by creating groups through the "team purchase" feature.  As stated by the Pinduoduo Defendants in Pin Inc.'s F-1/A statement: "Buyers can access our platform and make team purchases by either visiting our platform directly or through popular social networks, such as Weixin and QQ.

14

They are encouraged to share product information on such social networks, and invite their friends, family and social contacts to form a shopping team to enjoy the more attractive prices available under the 'team purchase' option."  On information and belief, groups of Chinese-speaking mothers will work together to buy baby goods in bulk from sellers on the internet to save money on each item.

74.    Defendant Sellers use the Pinduoduo e-commerce website to:

a.    Sell unauthorized and/or counterfeit DADDY'S CHOICE diapers while falsely claiming to be authorized;

b.    Sell unauthorized and/or counterfeit DADDY'S CHOICE diapers while providing "authenticity" guarantees;

c.    Use forged "Certificates of Authorization" containing Plaintiff's name and the DADDY'S CHOICE marks to sell unauthorized and/or counterfeit goods;

d.    Sell unauthorized and/or counterfeit DADDY'S CHOICE diapers while falsely claiming to be a "flagship store;" or

e.    Sell unbranded diapers in packaging almost identical to that used by Plaintiff for its DADDY'S CHOICE diapers while claiming that the unbranded diapers are manufactured in the "same factory" as DADDY'S CHOICE diapers.

75.    On information and belief, although some consumers are aware or suspect that they are purchasing counterfeit goods when they purchase goods on Pinduoduo, other consumers believe that they are buying authentic merchandise at a discounted price.

76.    Pinduoduo Defendants know that Pindoudou has made it possible for third-party sellers to represent themselves falsely as "authorized" retailers of Plaintiff's products, including by posting forged "Certificates of Authorization" containing Plaintiff's name and the DADDY'S

CHOICE marks, and also to implicitly claim affiliation with Plaintiff by calling themselves a "flagship store."  Screen shots showing unauthorized or counterfeit DADDY'S CHOICE products available for sale on Pinduoduo are attached as **Exhibit 3**.

77.     Pinduoduo Defendants also allow third-party sellers to list diapers for sale in packaging that is almost identical to that used by Plaintiff for its diapers while claiming that the diapers are made in the "same factory" as Daddy's Choice diapers.  A screen shot showing goods offered for sale on Pinduoduo in substantially similar packaging and falsely touted as being made in the "same factory" is attached as **Exhibit 4.**

78.     On information and belief, Pinduoduo facilitates the sale of unauthorized or counterfeit goods by making it easy for one seller to copy another seller's webpage contents through a feature called the "Pinduoduo loading assistant."

79.     On information and belief, the Pinduoduo loading assistant allows a seller to do a key word search for other sellers with similar items and then simply copy the first seller's webpage content, including pictures with trademarks.

80.     On information and belief, Pindoudou has also knowingly made it possible for third-party sellers to resell goods containing the DADDY'S CHOICE marks which were intended for sale in China to other countries, including the United States and New York, with knowledge that the goods, including DADDY'S CHOICE branded goods were intended for sale solely in China.  Defendants are compensated for enabling the sale of these infringing and unauthorized goods.

81.     On information and belief, Pinduoduo has also knowingly made it possible and facilitated third-parties to sell diapers which are confusingly similar to Plaintiff's diapers.

82.     On information and belief, Pinduoduo has also knowingly made it possible and

facilitated third-parties to sell counterfeit diapers containing the DADDY'S CHOICE marks.

83.     Pinduoduo Defendants knowingly encourage, assist, and profit from the sale of counterfeit and unauthorized goods on their Pinduoduo e-commerce platform.  Pinduoduo is well-known as a source of low-cost goods and encourages its users to form groups to buy larger volumes of goods at lower prices.

84.     Pinduoduo is a relatively new e-commerce platform, but is experiencing significant growth.  According to Pin Inc.'s Form F-1/A, its revenue grew from RMB504.9 million in 2016 to RMB1,744.1 million in 2017, and from RMB37.0 million for the first three months of 2017 to RMB1,384.6 million in the same period in 2018.

85.     On or about July 26, 2018, Pin Inc. completed an initial public offering ("IPO") in the United States.  On information and belief, Pin Inc. raised $1.6 billion through its IPO.  In its Form F-1/A filed prior to its IPO, Pin Inc. stated that it would use the proceeds from an IPO to, *inter alia*, expand its business operations.

86.     On information and belief, Pinduoduo Defendants were or should have been aware that third-party merchants using its e-commerce platform to sell goods bearing the DADDY'S CHOICE marks were not authorized to do so by Plaintiff and were not affiliated in anyway with Plaintiff.

87.     On information and belief, Pinduduo Defendants were or should have been aware that goods bearing the DADDY'S CHOICE marks listed for sale on its e-commerce platform were only intended for sale in China through its authorized sales channels, which do not include Pinduoduo.

88.     On information and belief, Pinduoduo Defendants were or should have been aware that some or all of the goods bearing the DADDY'S CHOICE marks listed for sale on its

e-commerce platform were likely counterfeit as Daddy's Choice has not authorized the sale of its

goods on Pinduoduo and counterfeit goods are prevalent in China and on Pinduoduo.

89.     Pin Inc. included self-serving language in its Form F-1/A acknowledging that it is

aware that sellers use its e-commerce platform to sell counterfeit and unauthorized goods,

stating: "[w]e have been and may continue to be subject to allegations and lawsuits claiming that

products listed or sold through our platform by third-party merchants are counterfeit,

unauthorized, illegal or otherwise infringe third-party copyrights, trademarks and patents or other

intellectual property rights, or that content posted on our user interface contains misleading

information on description of products and comparable prices."

90.     On information and belief, Pinduoduo Defendants have been subject to criticism

by consumers and the general public, including public demonstrations and protests, due to, *inter*

*alia*, the presence of counterfeit and unauthorized goods on the Pinduoduo e-commerce platform.

91.     Pin Inc. is the defendant in several securities actions in the United States,

including New York, claiming that Pin Inc. made materially false statements in public filings

regarding the prevalence of counterfeit goods on its e-commerce platform.

92.     Plaintiffs in the securities actions claim that Pin Inc. made material misstatements

or omissions in its public documents by failing to disclose that it was not taking adequate steps to

prevent counterfeit products from being sold on its platform or to remove counterfeit products

from its platform, that it was encouraging the sale of infringing goods, and that its growth was

achieved in part by the sale of counterfeit goods on its e-commerce platform.

93.     Additionally, although Pin Inc. claims to have adopted "strict measures" to

prevent against the sale of counterfeit or unauthorized goods, it acknowledged that "in January

2018, we were required by the relevant government authorities to strengthen supervision on the

qualifications of the distributors of publications on our platform and to respond effectively to claims of copyright infringement."

94.     On or about August 1, 2018, China's State Administration for Market Regulation issued a press release stating that it had asked the Shanghai Industry and Commerce Bureau to have an "official talk" with the Pinduoduo Defendants and government authorities to conduct an investigation into reports of counterfeit goods being sold on the Pinduoduo e-commerce platform.

95.     On or about August 5, 2018, China's State Administration for Market Regulation issued a press release stating that it had an "official talk" with the Pinduoduo Defendants and asked the Pinduoduo Defendants to handle media and customer complaints seriously, and that the Pinduoduo Defendants had agreed to cooperate with the government.

96.     Royal, and on information and belief, other sellers on the Pinduoduo e-commerce platform are willing and have shipped counterfeit, unauthorized and/or infringing goods bearing the DADDY'S CHOICE marks or misleading packaging to consumers in the United States, including New York.

97.     Thus, Consumers located in the United States, including New York, are able to purchase and receive counterfeit, unauthorized and/or infringing goods bearing the DADDY'S CHOICE marks or misleading packaging by using the Pinduoduo e-commerce platform.

98.     Although the individual Defendant Sellers ship the goods to consumers, consumers are only able to locate, contact, and arrange for the purchase of goods from the Defendant Sellers through Pinduoduo.

8383236.3

99.     Plaintiff has advised Pinduoduo Defendants that they are allowing sellers to sell products violating Plaintiff's prior established and exclusive rights in its name and registered mark and to falsely claim authorization from or affiliation with Plaintiff.

100.    In 2017, Plaintiff, through counsel, sent multiple official notice letters to Pinduoduo Defendants informing Pinduoduo Defendants that third-party sellers were selling counterfeit or unauthorized goods bearing the DADDY'S CHOICE marks on its e-commerce platform.

101.    Although Pinduoduo Defendants responded to these letters by initially removing some counterfeit or unauthorized goods from its e-commerce platform, unauthorized goods quickly re-appeared on Pinduoduo.

102.    On or about April 24, 2018, Plaintiff sent Pinduduo Defendants a letter informing them that counterfeit or unauthorized goods with the DADDY'S CHOICE marks were again being offered for sale on their e-commerce platform.  Pinduduo Defendants did not respond to this letter.

103.    On or about July 11, 2018, Plaintiff sent Pinduoduo Defendants a message through Wechat regarding the prior attorney letters and discussions about counterfeit or unauthorized goods with the DADDY'S CHOICE marks on the Pinduoduo e-commerce platform.  Plaintiff received a message in response that the message had been received and the Pinduoduo Defendants would revert back, but the Pinduoduo Defendants did not respond further to this message.

104.    On or about July 17, 2018, a keyword search on the Pinduoduo e-commerce platform for the terms "Daddy Choice Diapers" returned 31 merchants/stores selling "Daddy's Choice Diapers."

105.    On information and belief, keyword searches on Pinduoduo do not return all sellers selling a particular product.  Instead of using keyword searches, some sellers have a unique barcode which they share with their "friends" on the Wechat social network.

106.    On or about August 6, 2018, Plaintiff sent Pinduoduo Defendants a letter by express mail and email showing screenshots of counterfeit or unauthorized goods with the DADDY'S CHOICE marks on the Pinduoduo e-commerce platform.  Two standard email responses were received, stating the Pinduoduo Defendants would take action.   A copy of Plaintiff's August 6, 2018 letter is attached hereto as **Exhibit 5**.

107.    Plaintiff's August 6, 2018 letter contained a 229 page attachment showing 187 sellers on the Pinduoduo e-commerce platform who were selling counterfeit or unauthorized goods bearing the DADDY'S CHOICE marks.

108.    On information and belief, the Pinduoduo Defendants did not take any corrective actions in response to Plaintiff's July 11, 2018 message or August 6, 2018 letter.   Of the 187 sellers identified in Plaintiff's August 6, 2018 letter, approximately half, or 95 sellers were still offering unauthorized or counterfeit goods with the DADDY'S CHOICE marks on the Pindudoduo e-commerce platform as of September 27, 2018.  A copy of screenshots showing counterfeit or unauthorized goods bearing the DADDY'S CHOICE marks available for purchase on the Pinduoduo e-commerce platform on or about September 27, 2018 is attached hereto as **Exhibit 6**.

109.    On or about November 14, 2018, approximately fifty of the sellers identified in Plaintiff's August 6, 2018 letter were still selling counterfeit or unauthorized goods with the DADDY'S CHOICE marks on Pinduoduo.

8383236.3

110.    Despite being placed on notice of Plaintiff's prior rights, Pinduoduo Defendants have refused to curtail their unlawful activities.

111.    Instead of curtailing their unlawful activities, on information and belief, Pinduoduo Defendants have attempted to hide the presence of counterfeit or unauthorized goods by changing what search terms reveal counterfeit or unauthorized goods bearing the DADDY'S CHOICE marks or goods sold in confusingly similar packaging to that of Plaintiff's goods.

112.    Previously, consumers were able to locate goods bearing the DADDY'S CHOICE marks on Pinduoduo by using search terms containing the words "Daddy's Choice" or some variation thereof.  Now, after Plaintiff has complained about the presence of counterfeit and unauthorized goods on Pinduoduo and filed this lawsuit, those same search terms return a message that "pursuant to relevant rules, research result will not show."  However, if consumers use other search terms such as, for example, the phrase "Extreme Simplicity," which Plaintiff has trademarked in China, they are able to locate counterfeit or unauthorized goods bearing the DADDY'S CHOICE marks on Pinduoduo.

113.    On or about July 20, 2018, Plaintiff commenced an action against Defendants in a Chinese local court on unfair competition grounds based on Defendants' unlawful activities in China seeking (1) removal of untrue statements on the Pinduoduo e-commerce platform and a cease and desist of unfair competition; (2) a public apology; (3) damages in the amount of RMB 4.8 million, including attorney's fees and notary public fees; and (4) filing fee.

114.    Pinduoduo Defendants have responded to the Chinese action by claiming that they are not appropriate defendants, they have taken necessary actions regarding counterfeit goods, the alleged counterfeit goods are no longer available, and/or Plaintiff has only suffered minimal damages.

115.   By allowing and facilitating third-party sellers to falsely claim to be part of, affiliated with or authorized by Plaintiff, and by allowing and facilitating third-party sellers to ship goods to the United States which were intended for sale in China, Pinduoduo Defendants are likely to confuse and deceive the trade and the public unless enjoined.

116.   By selling diapers while falsely claiming to be part of, affiliated with, or authorized by Plaintiff, and by shipping goods to the United States which were intended for sale in China, Defendant Sellers are likely to confuse and deceive the trade and the public unless enjoined.

117.   Defendants' unlawful use of Plaintiff's DADDY'S CHOICE mark has extended to the United States and this district.

118.   On information and belief, when consumers contact Pinduoduo Defendants by phone and inform Pinduoduo Defendants that they wish to have goods shipped directly to New York, they are directed to deal directly with the third-party sellers on Pinduoduo Defendants' e-commerce platform to do so.

119.   Consumers are able to directly input American addresses as the "ship to" address on the Pinduoduo e-commerce platform.

120.   On information and belief, Defendant Sellers are willing to and have shipped goods to consumers in the United States, including New York.  Royal is one seller which has shipped goods to a consumer located in New York.

121.   On information and belief, Pinduoduo Defendants knowingly provided the use of their e-commerce platform to merchants offering goods bearing the DADDY'S CHOICE marks and intended for sale in China to consumers in the United States, and knowingly allowed sellers to falsely describe themselves as "authorized" or "flagship store," and have thereby participated

23

in and/or facilitated third parties infringement of the DADDY'S CHOICE marks and unfair competition with Plaintiff.

FIRST CLAIM FOR RELIEF
TRADEMARK INFRINGEMENT
AGAINST DEFENDANT SELLERS
(15 U.S.C. § 1114)

122.   Plaintiff repeats and realleges every allegation set forth in paragraphs 1 through 121 above, and incorporates them herein by reference.

123.   Defendant Sellers' use of the DADDY'S CHOICE mark in connection with the sale, offering for sale, distribution, promotion, and advertising of related products and services infringes Plaintiff's Registration Nos. 5,238,282 and 5,463,121 for DADDY'S CHOICE.  Such use is likely to cause confusion, to cause mistake, or to deceive, and constitutes federal trademark infringement.

124.   Plaintiff has not authorized the sale of its goods on Pinduoduo.

125.   On information and belief, some of the goods bearing the DADDY'S CHOICE marks offered for sale by Defendant Sellers on Pinduoduo are counterfeit.

126.   On information and belief, some of the goods bearing the DADDY'S CHOICE marks offered for sale by Defendant Sellers on Pinduoduo are unauthorized "gray goods" which were originally intended for sale in China.  There are material differences between such unauthorized goods sold by Defendant Sellers and the goods offered by Plaintiff in the United States, for example the unauthorized packaging has labels in Chinese, not English.

127.   Defendant Sellers' acts have a substantial effect on consumers in the United States.

24

128.     On information and belief, Plaintiff's reputation in New York is harmed when consumers in New York order goods from Defendant Sellers for delivery in New York and receive counterfeit goods or gray goods with Chinese labels.

129.     Consumers and the trade are likely to be confused, mistaken, or deceived, and to believe that the products offered for sale by Defendant Sellers on Pinduoduo are those of Plaintiff, or are sponsored, authorized, licensed by, or otherwise connected with Plaintiff.  By their acts, Defendant Sellers unjustly enrich themselves and damage Plaintiff.

130.     Defendant Sellers' acts are in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

131.     Defendant Sellers' acts are willful and deliberate.

132.     Defendant Sellers' conduct will cause irreparable injury to Plaintiff unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

SECOND CLAIM FOR RELIEF
CONTRIBUTORY TRADEMARK INFRINGEMENT
AGAINST PINDUODUO DEFENDANTS
(15 U.S.C. § 1114)

133.     Plaintiff repeats and realleges every allegation set forth in paragraphs 1 through 132 above, and incorporates them herein by reference.

134.     Pinduoduo Defendants' operation of Pinduoduo and its active facilitation of sellers' and Defendant Sellers' use of the DADDY'S CHOICE mark in connection with the sale, offering for sale, distribution, promotion, and advertising of related products and services contributes to infringement of Plaintiff's Registration Nos. 5,238,282 and 5,463,121 for DADDY'S CHOICE.  Such use is likely to cause confusion, to cause mistake, or to deceive, and constitutes federal trademark infringement.

135.     Plaintiff has not authorized the sale of its goods on Pinduoduo.

25

136.     On information and belief, some of the goods bearing the DADDY'S CHOICE marks offered for sale by Defendant Sellers on the Pinduoduo Defendants' e-commerce platform are counterfeit.

137.     On information and belief, some of the goods bearing the DADDY'S CHOICE marks offered by Defendant Sellers on the Pinduoduo Defendants' e-commerce platform are unauthorized "gray goods" which were originally intended for sale in China.  There are material differences between the unauthorized goods sold on Pinduoduo and the goods offered by Plaintiff in the United States, for example the unauthorized packaging has labels in Chinese, not English.

138.     Pinduoduo Defendants' acts have a substantial effect on consumers in the United States.

139.     On information and belief, Plaintiff's reputation in New York is harmed when consumers in New York order goods through Pinduoduo and receive counterfeit goods or gray goods with Chinese labels.

140.     Consumers and the trade are likely to be confused, mistaken, or deceived, and to believe that the products offered for sale on Pinduoduo Defendants' e-commerce site are those of Plaintiff, or are sponsored, authorized, licensed by, or otherwise connected with Plaintiff.  By their acts, Pinduoduo Defendants unjustly enrich themselves and damage Plaintiff.

141.     Pinduoduo Defendants' acts are in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

142.     Pinduoduo Defendants' acts are willful and deliberate.

143.     Pinduoduo Defendants' conduct will cause irreparable injury to Plaintiff unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

26

THIRD CLAIM FOR RELIEF
UNFAIR COMPETITION
AGAINST DEFENDANT SELLERS
(15 U.S.C. § 1125(a))

144.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 143 above, and incorporates them herein by reference.

145.    Defendant Sellers' use of the DADDY'S CHOICE mark in connection with the advertising, promotion, and sale of goods that are similar to, related to, or competitive with those offered by Plaintiff, but that are not under Plaintiff's control or management constitutes unfair competition.  Defendant Sellers' acts constitute the use of a false designation of origin and a false representation that goods offered for sale on the Pinduoduo e-commerce platform are Plaintiff are sponsored, authorized, licensed by or otherwise connected with Plaintiff and their quality assured thereby.

146.    On information and belief, Defendant Sellers have knowingly labeled themselves as "authorized" or "flagship store" or offered "authenticity" guarantees in connection with the sale of goods bearing the DADDY'S CHOICE marks although they are not authorized by or affiliated with Plaintiff.

147.    By falsely describing themselves as "authorized" or "flagship store," these unauthorized sellers create the false impression that they are, or are affiliated with, Plaintiff and are receiving their goods directly from Plaintiff.

148.    By offering "authenticity" guarantees, these unauthorized sellers create the false impression that they are receiving their goods directly from Plaintiff and, by offering the goods at a lower price, lower the price at which a consumer is willing to purchase Plaintiff's goods.

8383236.3

149.    On information and belief, Defendant Sellers have offered for sale diapers in packaging almost identical to that used by Plaintiff's for its DADDY'S CHOICE diapers while claiming that the infringing diapers are manufactured in the "same factory."

150.    By falsely claiming that the diapers are manufactured in the "same factory" and using substantially identical packaging, these unauthorized sellers create the false impression that they are affiliated with Plaintiff, are receiving their goods directly from Plaintiff, and/or are selling the same goods as Plaintiff.

151.    Defendant Sellers' actions have a substantial effect on U.S. consumers.

152.    On information and belief, unauthorized sales of Plaintiff's goods in the United States depress the number of authorized sales of Plaintiff's goods.

153.    Plaintiff has invested considerable time, effort, and money into establishing itself as a premium baby-care brand.

154.    On information and belief, by falsely claiming that goods offered for sale on the Pinduoduo e-commerce platform, a discount e-commerce platform,  are sponsored, authorized, licensed by or otherwise connected with Plaintiff, Defendant Sellers are harming Plaintiff's reputation, including among consumers located in the United States and New York.

155.    Defendant Sellers' acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

156.    Defendant Sellers' conduct will cause irreparable injury to Plaintiff unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

8383236.3

FOURTH CLAIM FOR RELIEF
CONTRIBUTORY UNFAIR COMPETITION
AGAINST PINDUODUO DEFENDANTS
(15 U.S.C. § 1125(a))

157.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 156 above, and incorporates them herein by reference.

158.   Pinduoduo Defendants' operation of Pinduoduo and its active facilitation of sellers' and Defendant Sellers' use of the DADDY'S CHOICE mark in connection with the advertising, promotion, and sale of goods that are similar to, related to, or competitive with those offered by Plaintiff, but that are not under Plaintiff's control or management constitutes contributory unfair competition.  Pinduoduo Defendants' acts contribute to the use of a false designation of origin and a false representation that goods offered for sale on the Pinduoduo e-commerce platform are Plaintiff are sponsored, authorized, licensed by or otherwise connected with Plaintiff and their quality assured thereby.

159.   On information and belief, Pinduoduo Defendants have knowingly allowed sellers who are not authorized by or affiliated with Plaintiff to describe themselves as "authorized" or "flagship store," or offer "authenticity" guarantees on its Pinduoduo e-commerce platform.

160.   By falsely describing themselves as "authorized" or "flagship store," or offering "authenticity" guarantees these unauthorized sellers create the false impression that they are, or are affiliated with, Plaintiff and are receiving their goods directly from Plaintiff.

161.   On information and belief, Pinduoduo Defendants allow and encourage sellers including the Defendant Sellers, to offer for sale diapers in packaging almost identical to that used by Plaintiff's for its DADDY'S CHOICE diapers while claiming that the infringing diapers are manufactured in the "same factory."

162.    By falsely claiming that the diapers are manufactured in the "same factory" and using substantially identical packaging, these unauthorized sellers create the false impression that they are affiliated with Plaintiff, are receiving their goods directly from Plaintiff, and/or are selling the same goods as Plaintiff.

163.    Pinduoduo Defendants' and Defendant Sellers' actions have a substantial effect on U.S. consumers.

164.    On information and belief, unauthorized sales of Plaintiff's goods in the United States through Pinduoduo depress the number of authorized sales of Plaintiff's goods.

165.    Plaintiff has invested considerable time, effort, and money into establishing itself as a premium baby-care brand.

166.    On information and belief, by allowing Defendant Sellers to falsely claim that goods offered for sale on the Pinduoduo e-commerce platform, a discount e-commerce platform, are sponsored, authorized, licensed by or otherwise connected with Plaintiff, Pinduoduo Defendants are harming Plaintiff's reputation, including among consumers located in the United States and New York.

167.    Pinduoduo Defendants' acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

168.    Pinduoduo Defendants' conduct will cause irreparable injury to Plaintiff unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

FIFTH CLAIM FOR RELIEF<br>COMMON LAW UNFAIR COMPETITION

169.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 168 above, and incorporates them herein by reference.

30

170.    Defendants have prominently used DADDY'S CHOICE marks in connection with their business and the advertising, promotion, and sale of goods on their e-commerce platform.  Defendants' use of DADDY'S CHOICE marks for their own, related goods is likely to confuse the public as to the origin, source, sponsorship, or quality of Defendants' business and goods and is likely to mislead persons to believe that Defendants' business and goods are authorized by or affiliated with Plaintiff.

171.    Defendants' use of the DADDY'S CHOICE marks is with knowledge of Plaintiff's prior rights in the DADDY'S CHOICE name and marks.  By appropriating the goodwill of Plaintiff's name and marks, Defendants unjustly enriches themselves and damage Plaintiff.

172.    Defendants' conduct constitutes New York common law unfair competition with Plaintiff, which will cause irreparable injury to Plaintiff's good will and reputation unless enjoined by this Court.

WHEREFORE, Plaintiff demands judgment as follows:

1.    Permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendants from:

a.    Using the DADDY'S CHOICE marks, or any confusingly similar mark, corporate name, domain name, social media name, or other designation;

b.    Imitating, copying, using, reproducing, displaying, or authorizing any third party to imitate, copy, use, reproduce, or display Plaintiff's DADDY'S CHOICE marks, or any confusingly similar name or mark, in any manner or form or using any

31

variation, reproduction, counterfeit, copy, colorable imitation, or simulation thereof on or in connection with any business or service or the advertisement or promotion thereof;

      c.     Using, authorizing, or aiding in any way any third party to use any false designation of origin or false description, or performing any act that can, or is likely to, mislead members of the trade or public to believe that any good offered by or through Defendants is in any manner associated or connected with Plaintiff, or sponsored, approved, or authorized by Plaintiff;

      d.     Using, authorizing, or aiding in any way any third party to describe itself (expressly or implicitly) as "authorized" by Plaintiff, or as a "flagship store" affiliated with Plaintiff;

      e.     Authorizing, or aiding in any way any third party to resell goods bearing the DADDY'S CHOICE marks which were intended for consumers in China to consumers located in any other country;

      f.     Engaging in any other activity constituting unfair competition with Plaintiff, or constituting an infringement of Plaintiff's DADDY'S CHOICE marks;

      g.     Engaging in any of the acts complained of in this Complaint; and

      h.     Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (e) above.

    2.     Directing that Defendants, within five (5) days after entry of judgment, make all books and records and other documents concerning all transactions relating to DADDY'S CHOICE marks concerning any services or products connected therewith, or featuring such name or marks available to Plaintiff for review and inspection.

3.      Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any services or goods offered on the Defendants' e-commerce platform bearing the DADDY'S CHOICE marks or any confusingly similar mark or name, is authorized by Plaintiff or related in any way to Plaintiff.

4.      Directing that Defendants file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the above.

5.      Awarding Plaintiff such damages as it has sustained or will sustain by reason of Defendants' acts of unfair competition; all gains, profits, and advantages derived by Defendants from such conduct; and, pursuant to 15 U.S.C. § 1107, an amount up to three times the amount of such actual damages sustained as a result of Defendants' violation of the Lanham Act.

6.      Awarding Plaintiff exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate.

7.      Awarding Plaintiff its costs and disbursements incurred in this action, including its reasonable attorneys' fees.

8.      Awarding Plaintiff interest, including prejudgment interest, on the foregoing sums.

9.      Awarding Plaintiff such other and further relief as the Court may deem just and proper.

Dated: November 16, 2018

CARTER LEDYARD & MILBURN, LLP

By:_____

    John M. Griem, Jr.
    Jeffrey S. Boxer
    Madelyn K. White
2 Wall Street
New York, NY 10005
(212) 732-3200
griem@clm.com
boxer@clm.com
white@clm.com